# IN THE MATTER OF JOSÉ TORO VELEZ, Bankrupt.

Ponce, ——, Bankruptcy, No. 56.

## POWERS OF REFEREE IN SUMMARY PROCEEDINGS.

Bankruptcy—Judicial District—Division.

1. Section 38 (3) of the Bankruptcy Act, which gives the referee the powers of the judge for certain purposes during the latter's

In the Matter of Velez.

absence from the district refers to the judicial district, and not
to the divisional district, of the referee.

Bankruptcy—Proceedings in Bankruptcy.

2. Proceedings in bankruptcy include adjudication, collection of
property by the trustee, distribution of proceeds, and the discharge
of the bankrupt. The referee has power to act in a summary
manner in all these four proceedings.

Bankruptcy—Controversies Arising Out of Bankruptcy.

3. A proceeding by a trustee in bankruptcy against a third party
is a controversy arising out of bankruptcy, and must be exercised
in accordance with the provisions of §§ 23, 60b, 67e and 70e of the
Bankruptcy Act.

Bankruptcy—Proceeding in Bankruptcy.

4. A proceeding in bankruptcy is in the nature of a suit in equity.

Bankruptcy—Third Parties—Summary Procedure.

5. A referee has not power to proceed by rule to compel third
parties to deliver property to the bankrupt's trustee.

Opinion filed January 29, 1917.

*Mr. Perez Marchand,* attorney for trustee on reconsideration.

*Mr. Ramon Dapena, pro se.*

HAMILTON, Judge, delivered the following opinion:

Application is made on behalf of the bankrupt's trustee to
the court to reconsider an opinion previously rendered on De-
cember 21, 1916. The importance of the question involved as
to jurisdiction of the referee rendered the court willing to con-
sider the matter further.

In the local district court at Ponce, suit was brought against

### In the Matter of Velez.

José Toro Velez March 11, 1916, by a creditor and attachment issued. Later in the month Gavilan and other creditors filed a petition in the Federal court to put José Toro Velez in involuntary bankruptcy. This seems to have led to a composition in the insular court, by virtue of which an application was filed in this court to dismiss the bankruptcy proceedings. After due notice to all creditors, this application came on for hearing May 12, on which day the adjudication was set aside and the petition in bankruptcy dismissed. Under the settlement in the insular court above mentioned the creditors therein received certain goods. There seems to have been dissatisfaction on the part of other creditors, and on July 10 José Toro Velez filed his petition in voluntary bankruptcy, upon which followed adjudication and reference. A trustee was duly selected, and he obtained from Referee Lee at Ponce an order on the compromise creditors to show cause why they should not turn over to him the funds which they had received as above, it being within four months of the adjudication in bankruptcy.

1. It is now contended that the referee had power to make such an order under § 38 (3) of the Bankruptcy Act, which is as follows:

"Jurisdiction of Referees.—Referees respectively are hereby invested, subject always to a review by the judge, within the limits of their districts as established from time to time, with jurisdiction to . . . (3) exercise the powers of the judge for the taking possession and releasing of the property of the bankrupt in the event of the issuance by the clerk of a certificate showing the absence of a judge from the judicial district, or the division of the district, or his sickness, or inability to act. . . ." [30 Stat. at L. 555, chap. 541, Comp. Stat. 1916, § 9622.]

It has previously been decided by this court that Porto Rico constitutes one district, and that at the time in question the judge was not absent from the judicial district or any division thereof. It is now contended that the word "district" used in the act refers to referee's district, this being a "division of the district." The words, however, do not bear this construction. A referee is not appointed for a technical division of a district. The intention of Congress seems to have been that a referee was to act in each county. Bankruptcy Act of 1898, §§ 34 (2) and 53 (a). It would be confusing to consider the word "division" in § 38 as applying to the jurisdictional limits of referees. A judicial district is a well-known entity, being Porto Rico in this instance, and a division is such for purposes of holding courts. The judge, therefore, was not absent from the district in the case at bar.

2. The question at bar calls for an investigation of the power of referees, and this depends upon the nature of the litigation in question. There is a distinction between proceedings in bankruptcy, on the one hand, and controversies arising out of bankruptcy on the other, a distinction which goes back to the Bankruptcy Act of 1867. Lathrop v. Drake, 91 U. S. 516, 23 L. ed. 414; First Nat. Bank v. Chicago Title & T. Co. 198 U. S. 280, 49 L. ed. 1051, 25 Sup. Ct. Rep. 693. Proceedings in bankruptcy include the four steps of adjudication of the bankrupt, collection of the property by his trustee, distribution of the proceeds among creditors, and the discharge of the bankrupt himself. All of these are properly steps in bankruptcy and within the full jurisdiction of the district court, and, except as so far limited to the judge, are within the jurisdiction of the referee in bankruptcy, administering the functions of the

court of bankruptcy. Bankruptcy Act, § 38(4); Rule 89 of this court. Under the Act of 1867 it would seem that the referee had only ministerial powers, while under the Act of 1898 he has been granted extensive judicial powers. Mueller v. Nugent, 184 U. S. 1, 46 L. ed. 405, 22 Sup. Ct. Rep. 269; Shutts v. First Nat. Bank, 3 Am. Bankr. Rep. 507. An expression used in the debate in Congress was that the referee under the new act was to be almost a judge in chambers. There is a great deal to be said in favor of extensive jurisdiction in the hands of the referees, in view of their knowledge of local conditions and power to facilitate the disposition of the ever-increasing bankruptcy business of the country.

There is no question as to his power to act in a summary proceeding, as in rule to show cause, in any step in bankruptcy, in all the four subdivisions of bankruptcy proceedings above mentioned.

He has power by summary proceeding to recover property of the bankrupt estate which at the time of the petition in bankruptcy is held by the bankrupt or anyone in privity with him. Mueller v. Nugent, supra. Further instances of what can be done by the referee in proceedings in bankruptcy are where money has been paid to a creditor after petition has been filed. Knapp & S. Co. v. Drew, 87 C. C. A. 365, 160 Fed. 414. But not where the creditor's claim antedates the bankruptcy proceedings. Re Walsh Bros. 163 Fed. 352; First Nat. Bank v. Chicago Title & T. Co. supra. The surrender of corporate books can be compelled by summary proceedings. Babbitt v. Dutcher, 216 U. S. 102, 54 L. ed. 402, 30 Sup. Ct. Rep. 372, 17 Ann. Cas. 969.

3. As to controversies arising out of bankruptcy proceed-

In the Matter of Velez.

ings, for instance, by a trustee against third parties, the powers of the court come into exercise under §§ 23, 60b, 67e, and 70e of the Bankruptcy Act, much of which are amendments made in 1903 and 1910. They are as follows:

"Section 23. Jurisdiction of United States and State Courts.—a. The United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"b. Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under § 60, subdivision b, and § 67, subdivision e, and § 70, subdivision e.

"c. The United States circuit courts shall have concurrent jurisdiction with the courts of bankruptcy, within their respective territorial limits, of the offenses enumerated in this act. . . .

"Section 60. Preferred Creditors.— . . . b. If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the

transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction. . . .

"Section 67. Liens.— . . . e. That all conveyances, transfers, assignments, or encumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicil, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers or encumbrances of his property made by a debtor at

In the Matter of Velez.

any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction. . . .

"Section 70. Title to Property.— . . . e. The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." [30 Stat. at L. 552, 562, 564, 565, chap. 541, as amended by 32 Stat. at L. 798–800, chap. 487, and 36 Stat. at L. 840, 842, chap. 412, Comp. Stat. 1916, §§ 9607, 9644, 9651, 9654.]

Originally § 23 limited the jurisdiction of the court of bankruptcy, except by consent, to such cases as might have entertained them if there had been no proceedings in bankruptcy.

Bardes v. First Nat. Bank, 178 U. S. 524, 44 L. ed. 1175, 20 Sup. Ct. Rep. 1000. In 1903 and 1910, however, this limitation was amended so that there were added to the jurisdiction of the courts of bankruptcy "suits for the recovery of property" as above. This greatly widened the jurisdiction of the bankruptcy court. It is true that § 23 still speaks of "United States circuit courts," but this is to be construed as applying to district courts, which from the new Judiciary Act of March 3, 1911, have inherited all the powers of the circuit courts.

4. A proceeding in bankruptcy is in the nature of a suit in equity. Bardes v. First Nat. Bank, 178 U. S. 535, 44 L. ed. 1181, 20 Sup. Ct. Rep. 1000. In England it was held by Lord Chancellor Hardwicke that he exercised in bankruptcy all the authority that he had when sitting in the court of chancery. Ex parte Cawkwell, 19 Ves. Jr. 233, 34 Eng. Reprint, 505, 1 Rose, 313; Re Hammond, 98 Fed. 845, 854. Lord Eldon held to the same effect. Ex parte Roffey, 19 Ves. Jr. 468, 34 Eng. Reprint, 590. More specifically it would seem that a proceeding in bankruptcy is one upon a general creditor's bill, and for some purposes may be considered as a proceeding *in rem*. Shutts v. First Nat. Bank, 3 Am. Bankr. Rep. 505.

5. How far the referee may exercise the powers of the court in plenary proceedings, whether in equity or otherwise, is not involved in this case. There is no doubt that the court can issue any additional orders necessary to carry out provisions of the Bankruptcy Act, § 2 (15). This court has by rule 8 conferred upon the referee all powers which can be delegated. How far this goes is not always easy to declare. The Bankruptcy Act itself is in this respect, as in others, difficult to construe. It was a compromise not only of commercial interests and of methods

of practice, but even of principles. Re Hammond, 98 Fed. 845. The court is inclined to construe the act so as to give all powers to the referee which will enable the Bankruptcy Act to extend its beneficent provisions to the people at all times and wherever they may reside. In the case at bar, however, the procedure before the referee was not plenary in any sense of the word, but summary in its objects and in its methods.

The parties affected by the action of the referee were creditors who had received property in compromise within four months of the declaration of bankruptcy of José Toro Velez. They claim that this settlement was for full and legal consideration; the trustee claims that it was a preference against the interest of other creditors. Which contention is correct is not now material. The point that is material is that the parties affected do not hold under a title arising subsequent to the institution of bankruptcy proceedings in collusion with the bankrupt or in subordination to his rights in any way. It would seem, therefore, that their claim is not of such a character as can be tried in a summary proceeding, unless the preceding involuntary proceedings in bankruptcy are to be construed to be in effect the beginning of the José Toro Velez bankruptcy case; that is to say, unless the two bankruptcy proceedings are to be construed in pari materia. Involuntary proceedings do not exclude voluntary proceedings, although they would be consolidated, as has been done in this court. There was a composition between José Toro Velez and his creditors. If it had been made in this court and approved by this court, it would bind all creditors, whether or not at that time parties. The result of such a composition is specially declared in the Bankruptcy Act, § 14 (c), to be a discharge from all debts except those created by the

In the Matter of Velez.

composition itself. To prevent injury to others, however, § 13 of the act expressly permits any creditors disapproving to apply to the court within six months and have the composition set aside for fraud. There is no other way in which this result can be effected. Collier, Bankr. p. 305. If this is not done, the composition must be held to be binding in rem. But the composition in question was not made in this court or approved by this court, and the involuntary proceeding itself was entirely set aside and dismissed upon due notice to creditors. This dismissal must be held to be binding upon all creditors, and place José Toro Velez as if there had been no proceedings of any character. The result would be that the composition in the local court would be previous to the only binding proceeding in bankruptcy; that is to say, the voluntary proceeding.

It follows, therefore, that the claim of the complaining composition creditors is not such as could be passed upon in a summary proceeding; and, while the case has been reconsidered on account of the importance of the principle involved, the conclusion reached by the court will not be changed.

It is so ordered.